IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>J&A TAX SERVICES, LLC, D/B/A EQUITAX; ANN HEIBECK A/K/A ANN MARIE DZIERGAS; CRYSTAL PATRICK; DEBRA WASHINGTON; KIANNA DANCY; SADE COOPER; and TASHA WASHINGTON,<br><br>Defendants. | Case No. 2:24-cv-10560 |

**COMPLAINT**

Plaintiff United States of America, at the request of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General, pursuant to 26 U.S.C. § 7401, brings this action seeking an injunction barring J&A Tax Services, LLC, d/b/a Equitax ("J&A"), Ann Heibeck a/k/a Ann Marie Dziergas ("Heibeck"), Crystal Patrick ("Patrick"), Debra Washington ("Debra"), Kianna Dancy ("Dancy"), Sade Cooper ("Cooper"), and Tasha Washington ("Tasha") (collectively, "Defendants") from engaging in the business of preparing federal tax returns, owning, managing, or controlling any business

engaged in tax return preparation, and employing any person acting as a federal tax return preparer. In support of its complaint, the United States alleges:

## Jurisdiction & Parties

1. Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402 and 7407.

2. J&A has a registered office at 39949 Garfield Road, Clinton Township, Michigan, 48038.

3. J&A's place of business is 15170 Gratiot, Detroit, Michigan 48205.

4. Heibeck resides in Palm Beach County, Florida. Heibeck owns J&A, which has a registered office and place of business at addresses included in paragraphs 2 and 3.

5. Patrick resides in Wayne County, Michigan.

6. Debra resides in Wayne County, Michigan.

7. Dancy resides in Wayne County, Michigan.

8. Cooper resides in Wayne County, Michigan.

9. Tasha resides in Wayne County, Michigan.

10. Most known J&A customers are located in the Detroit, Michigan area, and had their tax returns prepared by J&A in the Detroit, Michigan area.

11. All parties, except Heibeck, reside within the jurisdiction of this Court. Heibeck owns and operates a business (J&A) located within the jurisdiction of this Court.

## J&A's Tax Preparation Business

### *Ownership Structure – Owners of Money Rite "Sell" Tax Preparation Business to Heibeck Following IRS Examination*

12. The IRS conducted an investigation into Money Rite DMB, LLC ("Money Rite"), a tax preparation business that was located at 15170 Gratiot Ave, Detroit, Michigan 48205, for an improper Electronic Filing Identification Number ("EFIN") application.

13. Money Rite was established by an individual with the initials R.M. in 2016. However, the IRS determined in 2021 that Money Rite was actually owned by an individual with initials L.H.

14. To obtain an EFIN for a tax preparation business, the principal of the tax preparation business, or the applicant, must meet eligibility criteria and pass a suitability check. *See* IRM 8.7.13.1.1. The IRS determined that L.H., as the true owner, must pass suitability and be listed as the principal of Money Rite for the company to be in compliance.

15. During the course of the Money Rite examination, the IRS interviewed R.M., and she informed the IRS that she was aware that L.H. would be

precluded by the IRS from passing suitability as a principal, because of his criminal history.

16. Following its investigation, the IRS determined that L.H. was the true owner and expelled R.M. from the IRS e-file program in 2021.

17. On August 25, 2021, R.M. informed the IRS that she intended on selling Money Rite.

18. Heibeck was aware of Money Rite's tax preparation business because she had previously done accounting work for Money Rite.

19. Heibeck learned from L.H. that Money Rite was for sale.

20. On January 12, 2022, Heibeck signed a "purchase and five-year lease agreement" (the "agreement") of Money Rite. The agreement is also signed by L.H. and R.M., on behalf of Money Rite.

21. The agreement provided that Heibeck "is leasing the premises located at 15170 Gratiot, Detroit, Michigan 48025," from L.H., "for the purpose of running Money Rite DMB LLC, for the period of five (5) years."

22. The agreement provided that during the five-year period, Heibeck would pay one-third of the net profits from Money Rite to L.H. and one-third of the net profits from Money Rite to R.M.

23. As part of the agreement, Heibeck received Money Rite's computers, software, clients, and trained staff—including Patrick, Debra, Dancy, Cooper, and Tasha.

24. J&A was established as an LLC on or about July 22, 2021 under the name J&A Tax Services LLC. Heibeck is the only owner of J&A.

25. On or about January 12, 2022, Money Rite became J&A Tax Services LLC.

26. On January 26, 2022, J&A Tax Services LLC filed a Certificate of Assumed Name with the Michigan Department of Licensing and Regulatory Affairs: Corporations, Securities, & Commercial Licensing Bureau. The assumed name was "Equitax." Ann M. Dziergas was listed as the owner, and signed the certificate on January 16, 2022.

27. Heibeck maintains the books and records for J&A.

28. J&A has a bank account at Citizens Bank, and Heibeck, her husband, James Heibeck, and R.M. have a signatory right on J&A's bank account at Citizens Bank.

***Business Operations***

29. J&A offers tax return preparation services through return preparers.

30. J&A has a business address of 15170 Gratiot, Detroit, Michigan, 48205.

31. L.H. owns the building at 15170 Gratiot.

32. J&A has a mailing address of 15361 Yale Drive, Clinton Township, MI 48205.

33. Most customers came to J&A when Heibeck "purchased" the business, as they had been customers at Money Rite.

34. New customers come to J&A via word of mouth.

35. Most customers are repeat customers and usually make appointments.

36. J&A requires each customer to complete a questionnaire every year to assist J&A tax return preparers in preparing the customers' income tax returns, even repeat customers.

37. Documents provided by clients are usually in paper form.

38. Client files are kept for at least 7 years in a locked cabinet at the J&A location at 15170 Gratiot Avenue, Detroit, MI.

39. Heibeck has the key to the locked cabinet.

40. Individual tax return preparers at J&A review the returns they draft with clients.

41. After each individual tax return preparer finishes a return, prior to submission to the IRS, they submit the return to what they refer to as a "submission bin."

42. Heibeck then reviews every return prior to submitting the return to the IRS.

43. Heibeck has claimed during an interview with the IRS that her review confirms that social security numbers match, that documentation and due diligence have been followed, and that calculations are correct.

44. Heibeck told the IRS that she did not discover any false items when reviewing tax returns for tax year 2021 through this process.

45. 95% of the returns that J&A preparers prepare are filed electronically.

46. Tax preparers prepare returns using TaxSlayer software.

47. TaxSlayer is also the software that the preparers used at Money Rite.

48. J&A charges a preparation fee of $300 and up. The price may change depending on what is on the return.

49. J&A's preparation fees are usually taken out of clients' refunds.

50. Sometimes J&A's preparation fees are paid in cash, after the customer's refund check is cashed at the preparer location.

***Management of J&A***

51. Since "purchasing" Money Rite and renaming it J&A, Heibeck is, and has been, the Principal, Responsible Official, and Primary Contact for J&A.

52. Heibeck is the Resident Agent of J&A.

53. Since 1980, Heibeck has taken courses in order to help her learn how to prepare taxes.

54. Heibeck does not hold any professional degrees.

55. Heibeck asks the individual return preparation staff to complete IRS yearly updates and to provide her with certificates of completion.

56. Instead of receiving a salary from J&A, Heibeck takes a portion of J&A's profits.

57. Patrick has been a return preparer with J&A since the 2022 filing season.

58. Tasha has been a return preparer with J&A since the 2022 filing season.

59. Debra has been a return preparer with J&A since the 2022 filing season.

60. Dancy has been a return preparer with J&A since the 2022 filing season.

61. Cooper has been a return preparer with J&A since the 2022 filing season.

62. Heibeck supervises the individual return preparation staff, including Patrick, Tasha, Debra, Dancy, and Cooper.

63. Heibeck personally reviews returns prepared at J&A prior to submitting the returns to the IRS.

64. Heibeck has remote access to J&A's computers, and this remote access allows her to conduct daily reviews if she cannot be physically present in the office.

65. Heibeck transmits returns to the IRS.

66. Heibeck has designated Patrick as acting manager and allows her to transmit returns to the IRS if Heibeck is not available.

67. Heibeck prints refund checks.

68. Individual preparers hand refund checks to customers.

69. If customers have complaints that individual preparers cannot resolve, the complaints are elevated to Heibeck.

70. Returns are transmitted to the IRS using J&A's EFIN: 381240.

71. Heibeck applied for, and obtained, J&A's EFIN in June of 2021. This EFIN is associated with the following Firm ID: 861615249.

72. Heibeck told the IRS that, during the 2022 tax season, she spent between 35 and 40 hours per week at the J&A location.

73. After tax season, Heibeck visits the location once every couple of weeks.

74. Heibeck holds staff meetings between one to three times per month.

75. During staff meetings, Heibeck discusses the schedule and new tax laws and addresses any questions and concerns from staff.

**Defendants' Tax Preparation Schemes**

76. In general, Defendants make money by preparing false returns that claim tax refunds for customers who would otherwise not be entitled to them, or that inflate tax refunds for customers who would otherwise be entitled to lower refunds, and taking their return preparation fees from those refunds. Defendants use at least four definable schemes to generate or inflate their clients' refunds.

***The "Schedule C Schemes"***

77. An individual who earns income from a sole proprietorship reports that income and any expenses of the sole proprietorship on Schedule C. Schedule C is submitted to the IRS as an attachment to the individual's federal income tax return, Form 1040. The overall income (or loss) from Schedule C is reported as a line item on the individual's Form 1040.

78. For some customers, Defendants knowingly prepared false returns with Schedule C income and expenses for entirely fictitious sole proprietorships. For other customers, Defendants knowingly prepared returns falsely manipulating the Schedule C income and expenses of authentic sole proprietorships.

79. For some customers, fictitious or false Schedule C losses improperly reduce the customer's taxable income, often by offsetting other income, such as income reported on Form W-2.

80. For other customers, the manipulation of the Schedule C income by Defendants allows them to exploit the Earned Income Tax Credit ("EITC").

81. The EITC is a refundable tax credit available to certain low-income workers. The amount of the credit is based upon the taxpayer's earned income, filing status, and number of claimed dependents. The requirements for claiming the EITC are set forth in 26 U.S.C. § 32 and accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a refund from the U.S. Treasury.

82. For tax year 2021, the maximum amount of credit allowed to be claimed ranged from $1,502 (with no qualifying children) to $6,728 (with three or more qualifying children). Due to the manner in which the EITC is calculated, an individual with more dependents may be entitled to a larger EITC and, for certain income ranges, individuals with higher annual incomes are entitled to a larger credit than those with lower annual incomes. The adjusted gross income that would result in a single person with zero children claiming the maximum EITC in 2021 was $21,430; the adjusted gross income that would result in a married person

with three children claiming the maximum EITC in 2021 was $57,414. Some tax return preparers refer to the range of earned income corresponding to a maximum EITC as the "sweet spot."

83. To bring a customer's reported earned income within or closer to the EITC sweet spot, and depending on a customer's actual earned income (as reported on a Form W-2), Defendants manipulate self-employment income reported on the Schedule C, either by fabricating or inflating self-employment income or by understating self-employment income.

84. Defendants used the Schedule C Schemes to improperly reduce their customers' liabilities and/or inflate the tax refund their customers would be eligible to receive.

***The "Dependent Care Expense Scheme"***

85. A taxpayer may be eligible to claim a deduction for child and dependent care expenses incurred during the tax year.

86. Defendants knowingly prepared false returns claiming fictitious child and dependent care expenses, often listing a care provider that is unknown to the customer.

87. Defendants used the Dependent Care Expense Scheme to improperly reduce their customers' tax liabilities and/or to inflate the amount of a tax refund their customer would be eligible to receive.

***The "Education Expenses Scheme"***

88. The Internal Revenue Code (26 U.S.C.) contains provisions granting tax credits for certain education expenses.

89. To be eligible to claim the American Opportunity Credit or Lifetime Learning Credit, the law requires a taxpayer (or a dependent) to have received a Form 1098-T, Tuition Statement, from an eligible educational institution, whether domestic or foreign. However, the credit may be claimed if the student doesn't receive Form 1098-T because the student's educational institution is not required to furnish Form 1098-T under existing rules. In such cases, the credit can be claimed so long as the individual can demonstrate that they (or their dependent) were enrolled at an eligible educational institution and can substantiate the payment of qualified tuition and related expenses. *See Publication 970: Tax Benefits for Education (for use in preparing 2021 returns)*, DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE (Feb. 15, 2022) https://www.irs.gov/pub/irs-prior/p970--2021.pdf.

90. Defendants knowingly prepared false returns claiming qualified education expenses where the customers did not have the education expenses claimed, an educational institution did not submit a Form 1098-T reflecting any educational expenses to the IRS, and the customers did not tell Defendants that they had such expenses or that they had substantiation for such expenses.

91. Defendants knowingly prepared false Forms 8867, Paid Preparer's Due Diligence Checklist, certifying that taxpayers with respect to whom a Form 1098-T was not issued had, nevertheless, provided Defendants such a form or other documentation.

92. Defendants used the Education Expenses Scheme to improperly reduce their clients' tax liabilities and/or inflate the amount of a tax refund their clients would be eligible to receive.

***The "COVID-19 Relief Scheme"***

93. The Families First Coronavirus Response Act entitles a self-employed individual to a tax credit against income tax imposed on self-employment income, if the individual was unable to perform services as a self-employed individual due to certain specified circumstances related to COVID-19.

94. Form 7202, Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals, was created to provide sick and family leave to self-employed individuals affected by COVID-19. Defendants filed Forms 7202 when they should not have, or filed them including false amounts.

95. The amount of the credit is based on the individual's "net earnings from self-employment" and the number of days the individual was unable to

perform services as a self-employed individual due to the specified circumstances related to COVID-19.

96. Defendants knowingly prepared returns containing false information about customers' "net earnings from self-employment" and false information about the number of days customers were unable to perform services as self-employed individuals due to the specified circumstances related to COVID-19.

97. Defendants used the COVID-19 Relief Scheme to improperly reduce their customers' tax liabilities and/or inflate the amount of a tax refund their customers would be eligible to receive.

**IRS Investigation**

98. The IRS assigned a revenue agent to investigate Defendants' return preparation practices.

99. As part of the investigation, the IRS conducted interviews of Heibeck, Patrick, Debra, Dancy, Cooper, and Tasha.

100. In addition, the IRS conducted interviews of Defendants' customers to determine the accuracy of the items reported on their filed returns.

101. There were 865 returns prepared under J&A's EFIN, 381240, for processing year 2022, during which the 2021 income tax returns were prepared.

102. Of the returns prepared by Defendants, 98% claimed tax refunds.

103. The IRS focused the investigation on returns prepared by Defendants that fit within a subset population.

104. This subset population (hereinafter "Subset Population") consists of returns from processing year 2022, filed by Defendants under J&A's EFIN, 381240, that contained a Schedule C and/or Schedule 3 credits. Schedule 3 is used to report "Additional Credits and Payments," including the Credit for Child and Dependent Care Expenses and Education Credits.

105. There are 759 returns within the Subset Population.

106. The IRS interviewed 41 individuals whose tax returns Defendants prepared for the 2021 tax year. All of these individuals' tax returns were submitted under EFIN 381240. All of these individuals' tax returns were from the Subset Population.

107. The results of those interviews showed that the tax returns of 34 of those individuals, or 83%, contained errors which would require adjustment. Thus, the interviews showed an estimated percentage of errors in tax preparation year 2022 of 82.93% (34 divided by 41).

108. Based on information gleaned during the interviews, the IRS calculated tax loss from the 34 interviews that showed errors. The total tax loss for the 34 returns is calculated to be $117,589.

109. Based on those 34 interviews, the total estimated loss to the United States due to returns prepared by Defendants and filed in 2022 is $2,176,831. This estimate is reached by taking the average loss from the returns associated with these interviews ($117,589 divided by 34), and extrapolating based upon the estimated number of returns with changes to liability (629). The estimated number of returns with changes to liability is calculated as the total number of returns that Defendants prepared in 2022 that fit within the Subset Population (759) as multiplied by 82.93%.

110. The 34 returns described in ¶ 107 exhibit the schemes described in ¶¶ 76-97 in the following numbers (note, many returns exhibited the use of more than one scheme):

| **Scheme** | **Number of Returns** |
|---|---|
| Schedule C Scheme | 25 |
| Dependent Care Scheme | 15 |
| Education Expenses Scheme | 3 |
| COVID-19 Scheme | 2 |

## Specific Examples of Preparation of False Federal Tax Returns

***Crystal Patrick***

**CUSTOMER 1**

111. Patrick prepared CUSTOMER 1's[1] federal income tax return for tax year 2021.

112. CUSTOMER 1's 2021 return was submitted under EFIN 381240.

113. CUSTOMER 1's 2021 return contained fabricated child and dependent care expenses in the amount of $8,000, reported on Form 2441.

114. Patrick did not ask CUSTOMER 1 about childcare.

115. CUSTOMER 1 did not tell Patrick that CUSTOMER 1 incurred childcare expenses in the amount of $8,000.

116. CUSTOMER 1 did not tell Patrick that CUSTOMER 1 paid anyone to care for her children.

117. CUSTOMER 1 had not heard of the individual listed on CUSTOMER 1's 2021 return as the care provider.

[1] To protect the privacy of the customers referenced in this complaint, the United States has identified them as "CUSTOMER X." The United States will serve a key, which identifies each customer numbered in the complaint by name and Social Security number, along with the complaint upon Defendants.

118. CUSTOMER 1's 2021 return contained fabricated gross income of $1,369, repairs and maintenance of $15,247, and supplies of $17,895, for a net loss of $31,773, all reported on Schedule C for a writing business.

119. CUSTOMER 1 did not incur the Schedule C items described in the preceding paragraph, nor did CUSTOMER 1 tell Patrick that they had.

120. CUSTOMER 1 gave Patrick the EIN of, and name of, CUSTOMER 1's business.

121. CUSTOMER 1 did not tell Patrick that CUSTOMER 1 made money from the business.

122. CUSTOMER 1 did not tell Patrick that CUSTOMER 1 incurred expenses or losses in the amounts reported on CUSTOMER 1's 2021 return.

123. CUSTOMER 1's 2021 return reported W-2 income.

124. As a result of Patrick's fabrication of the Schedule C net loss, CUSTOMER 1's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 1 was not entitled.

125. CUSTOMER 1 was charged $600 for preparation of CUSTOMER 1's return, and this amount was taken from CUSTOMER 1's refund.

126. When CUSTOMER 1 cashed CUSTOMER 1's refund check at the Gratiot office, Patrick asked to be paid an additional $800.

127. CUSTOMER 1 paid Patrick the additional $800 in cash.

128. Patrick reported the false items on CUSTOMER 1's 2021 return to generate or increase CUSTOMER 1's refund.

**CUSTOMER 2**

129. Patrick prepared CUSTOMER 2's federal income tax return for tax year 2021.

130. CUSTOMER 2's 2021 return was submitted under EFIN 381240.

131. CUSTOMER 2's 2021 return contained fabricated gross income of $1,678, repairs and maintenance of $5,024, and supplies of $8,152, for a net loss of $11,498, all reported on Schedule C for an Unclassified business.

132. CUSTOMER 2 did not incur the Schedule C items described in the preceding paragraph, nor did CUSTOMER 2 tell Patrick they had.

133. CUSTOMER 2 did not operate any business in 2021.

134. CUSTOMER 2's 2021 return reported W-2 income.

135. As a result of Patrick's fabrication of the Schedule C loss, CUSTOMER 2's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 2 was not entitled.

136. Patrick reported the false items on CUSTOMER 2's 2021 return to generate or increase CUSTOMER 2's refund.

**CUSTOMER 3**

137. Patrick prepared CUSTOMER 3's federal income tax return for tax year 2021.

138. CUSTOMER 3's 2021 return was submitted under EFIN 381240.

139. CUSTOMER 3's 2021 return contained fabricated child and dependent care expenses in the amount of $6,000, reported on Form 2441.

140. CUSTOMER 3 did not inform Patrick that CUSTOMER 3 had dependents.

141. The children reported on CUSTOMER 3's return were related to, but not dependents of, CUSTOMER 3.

142. CUSTOMER 3 had not heard of the individual listed on CUSTOMER 3's return as the care provider.

143. CUSTOMER 3 paid $1,800 to Patrick via CashApp for the tax preparation.

144. Patrick reported the false items on CUSTOMER 3's 2021 return to generate or increase CUSTOMER 3's refund.

**CUSTOMER 4**

145. Patrick prepared CUSTOMER 4's federal income tax return for tax year 2021.

146. CUSTOMER 4's 2021 return was submitted under EFIN 381240.

147. CUSTOMER 4's 2021 return contained fabricated child and dependent care expenses in the amount of $8,000, reported on Form 2441.

148. Patrick did not ask if CUSTOMER 4 paid dependent care expenses, and CUSTOMER 4 did not tell Patrick that CUSTOMER 4 paid dependent care expenses.

149. CUSTOMER 4 did not pay dependent care expenses in 2021.

150. CUSTOMER 4 does not know who the individual listed on CUSTOMER 4's 2021 return as care provider is.

151. CUSTOMER 4's 2021 return contained fabricated gross income of $10,974, repairs and maintenance of $1,415, and supplies of $1,274, for a net profit of $8,285, all reported on Schedule C for a beauty salon business.

152. CUSTOMER 4 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 4 tell Patrick that they had.

153. CUSTOMER 4's 2021 return did not report any W-2 income.

154. As a result of Patrick's manipulation of the Schedule C items, CUSTOMER 4's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 4 was not entitled.

155. CUSTOMER 4 paid Patrick $800 for the return preparation, in cash, after cashing CUSTOMER 4's refund check at the Gratiot location.

156. Patrick reported the false items on CUSTOMER 4's 2021 return to generate or increase CUSTOMER 4's refund.

**CUSTOMER 5**

157. Patrick prepared CUSTOMER 5's federal income tax return for tax year 2021.

158. CUSTOMER 5's 2021 return was submitted under EFIN 381240.

159. CUSTOMER 5's 2021 return contained fabricated Schedule C expenses in the amount of repairs and maintenance of $15,745 and supplies of $11,247 for a net loss (when combined with gross income of $1,845) of $25,147, all reported on Schedule C for an Unclassified business.

160. CUSTOMER 5 did not incur the Schedule C expenses in the amounts described in the preceding paragraph, nor did CUSTOMER 5 tell Patrick they had.

161. CUSTOMER 5's 2021 return included W-2 income.

162. As a result of Patrick's fabrication of the Schedule C item amounts, CUSTOMER 5's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 5 was not entitled.

163. Patrick reported the false items on CUSTOMER 5's 2021 return to generate or increase CUSTOMER 5's refund.

***Debra Washington***

**CUSTOMERS 6 AND 7**

164. Debra prepared CUSTOMER 6 and 7's federal income tax return for tax year 2021.

165. CUSTOMERS 6 and 7 were married filing jointly.

166. CUSTOMER 6 and 7's 2021 return was submitted under EFIN 381240.

167. CUSTOMER 6 and 7's 2021 return contained fabricated gross income of $750, contract labor of $1,000, repairs and maintenance of $7,500, supplies of $1,350, taxes and licenses of $1,035, travel of $1,350, and utilities of $1,840 for a total net loss of $13,325, all reported on Schedule C for an Automotive Mechanical and Electrical Repair business under CUSTOMER 6's name.

168. CUSTOMER 6 did not incur the Schedule C expenses described in the previous paragraph, nor did CUSTOMER 6 tell Debra they had.

169. CUSTOMER 6 worked for a car company and received a W-2 from that company.

170. CUSTOMER 6 did not do any automotive side work.

171. CUSTOMER 6 and 7's 2021 return contained fabricated contract labor of $1,000, repairs and maintenance of $3,248, supplies of $1,150, taxes and licenses of $875, travel of $2,675, deductible meals of $1,250, and utilities of

$1,990 for a net loss of $11,688, all reported on a second Schedule C for a food delivery driver business under CUSTOMER 7's name.

172. CUSTOMER 7 did not incur the Schedule C expenses in the amounts described in the preceding paragraph, nor did CUSTOMER 7 tell Debra they had.

173. CUSTOMER 7 did do some food delivery in 2021, but only incurred gross receipts in the amount of $1,000.

174. CUSTOMER 7 did not discuss any business expenses with Debra.

175. CUSTOMER 6 and 7's 2021 return contained a casualty loss attributed to a federally declared disaster, with a fair market value of $20,000 reported on Form 4684—Casualties and Thefts.

176. CUSTOMER 6 and 7 did experience flooding in 2021. However, they did not discuss the flooding with Debra.

177. The casualty loss reported is incorrect.

178. CUSTOMER 6 and 7's 2021 return included W-2 income.

179. Debra reported the false items and amounts on CUSTOMER 6 and 7's 2021 return to generate or increase CUSTOMER 6 and 7's refund.

**<u>CUSTOMER 8</u>**

180. Debra prepared CUSTOMER 8's federal income tax return for tax year 2021.

181. CUSTOMER 8's 2021 return was submitted under EFIN 381240.

182. CUSTOMER 8's 2021 return contained fabricated Schedule C gross income of $1,500, and fabricated expenses of contract labor of $1,000, repairs and maintenance of $2,205, supplies of $1,392, and travel of $1,384 for a net loss of $5,500, all reported on a Schedule C for a home health services business.

183. CUSTOMER 8 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 8 tell Debra they had.

184. CUSTOMER 8 did not have a business in 2021.

185. CUSTOMER 8's 2021 return included W-2 income.

186. As a result of Debra's fabrication of the Schedule C items, CUSTOMER 8's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 8 was not entitled.

187. Debra reported the false items on CUSTOMER 8's 2021 return to generate or increase CUSTOMER 8's refund.

**CUSTOMER 9**

188. Debra prepared CUSTOMER 9's federal income tax return for tax year 2021.

189. CUSTOMER 9's 2021 return was submitted under EFIN 381240.

190. CUSTOMER 9's 2021 return contained fabricated gross income of $500, car and truck expenses of $1,262, contract labor of $1,000, rent or lease expenses of $2,200, repairs and maintenance expenses of $2,567, supplies of

$2,355, and travel expenses of $2,688 for a net loss of $11,572, all reported on a Schedule C for a janitorial services business.

191. CUSTOMER 9 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 9 tell Debra they had.

192. CUSTOMER 9's 2021 return included W-2 income.

193. As a result of Debra's manipulation of the Schedule C items, CUSTOMER 9's 2021 return reported an Earned Income Tax Credit in an amount of which CUSTOMER 9 was not entitled.

194. Debra reported the false amounts on CUSTOMER 9's 2021 return to generate or increase CUSTOMER 9's refund.

**CUSTOMER 10**

195. Debra prepared CUSTOMER 10's federal income tax return for tax year 2021.

196. CUSTOMER 10's 2021 return was submitted under EFIN 381240.

197. CUSTOMER 10's 2021 return contained a fabricated amount of listed child and dependent care expenses of $7,000, reported on Form 2441.

198. CUSTOMER 10 paid approximately $2,000 of child and dependent care expenses to an individual with the same last name, but different first name, than the individual listed on CUSTOMER 10's 2021 return.

199. Debra reported the false amount on CUSTOMER 10's 2021 return to generate or increase CUSTOMER 10's refund.

***Tasha Washington***

**CUSTOMER 11**

200. Tasha prepared CUSTOMER 11's federal income tax return for tax year 2021.

201. CUSTOMER 11's 2021 return was submitted under EFIN 381240.

202. CUSTOMER 11's 2021 return contained fabricated gross income of $850, contract labor of $975, repairs and maintenance of $1,024, supplies of $5,724, travel of $3,519, and utilities of $1,850 for a net loss of $11,792, all reported on a Schedule C for a catering business.

203. CUSTOMER 11 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 11 tell Tasha they had.

204. CUSTOMER 11 did have a catering business in 2021, but the business roughly broke even.

205. CUSTOMER 11's return contained W-2 income.

206. Tasha reported the false amount on CUSTOMER 11's 2021 return to generate or increase CUSTOMER 11's refund.

**CUSTOMER 12**

207. Tasha prepared CUSTOMER 12's federal income tax return for tax year 2021.

208. CUSTOMER 12's 2021 return was submitted under EFIN 381240.

209. CUSTOMER 12's 2021 return contained fabricated gross income of $8,055 and supplies of $640 for a net profit of $7,415, all reported on a Schedule C for a home care services business.

210. CUSTOMER 12 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 12 tell Tasha they had.

211. CUSTOMER 12 did not tell Tasha that they had a business.

212. CUSTOMER 12 did not have a business.

213. CUSTOMER 12's 2021 return did not report any W-2 income.

214. As a result of Tasha's manipulation of the Schedule C items, CUSTOMER 12's 2021 return reported an Earned Income Tax Credit in an amount of which CUSTOMER 12 was not entitled.

215. CUSTOMER 12's 2021 return contained tax credits for qualified sick and family leave from Form 7202 in the total amount of $890. CUSTOMER 12 was not entitled to this COVID-19 credit. Furthermore, the amount of the credit was falsely based on "Net Earnings from Self-Employment" on CUSTOMER 12's Form 7202, which was based upon the false income reported on the Schedule C.

216. The amount of "Net Earnings from Self-Employment" reported on Form 7202, furthermore, is double the amount reported on Line 6 of CUSTOMER 12's 2021 Schedule SE.

217. Tasha knew, or should have known, of the discrepancy described in the preceding paragraph.

218. CUSTOMER 12 did not discuss COVID-19 with Tasha and did not tell Tasha that CUSTOMER 12 was sick with COVID-19 in 2021.

219. Tasha reported the false amounts on CUSTOMER 12's 2021 return to generate or increase CUSTOMER 12's refund.

220. CUSTOMER 12 was charged $400 for preparation of CUSTOMER 12's return, and this amount was taken from CUSTOMER 12's refund.

221. When CUSTOMER 12 received CUSTOMER 12's refund check, Tasha asked to be paid an additional $400.

**CUSTOMER 13**

222. Tasha prepared CUSTOMER 13's federal income tax return for tax year 2021.

223. CUSTOMER 13's return was submitted under EFIN 381240.

224. CUSTOMER 13's 2021 return contained fabricated child and dependent care expenses in the amount of $6,000, reported on Form 2441.

225. CUSTOMER 13 did not pay dependent care expenses in 2021, nor CUSTOMER 13 tell Tasha that they did.

226. CUSTOMER 13 knows the individual listed on CUSTOMER 13's 2021 return and had, in fact, referred that individual to Tasha for tax return preparation, but did not pay that individual dependent care expenses in 2021.

227. CUSTOMER 13's return contained fabricated gross income of $11,250 and supplies of $793 for a net profit of $10,457, all reported on Schedule C for an adult and childcare services business.

228. CUSTOMER 13 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 13 tell Tasha they had.

229. CUSTOMER 13 did have a hair business in 2021, but the gross income for the business was approximately $2,000.

230. CUSTOMER 13's 2021 return reported less than $4,000 in W-2 income.

231. As a result of Tasha's manipulation of the Schedule C gross receipt amount, CUSTOMER 13's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 13 was not entitled.

232. CUSTOMER 13's 2021 return contained tax credits for qualified sick and family leave from Form 7202 in the total amount of $2,290. CUSTOMER 13 was not entitled to this COVID-19 credit. Furthermore, the amount of the credit

was falsely based on "Net Earnings from Self-Employment" on CUSTOMER 13's Form 7202, which was based upon the false income reported on the Schedule C.

233. The amount of "Net Earnings from Self-Employment" reported on Form 7202, furthermore, is double the amount reported on Line 6 of CUSTOMER 13's 2021 Schedule SE.

234. Tasha knew, or should have known, of the discrepancy described in the preceding paragraph.

235. CUSTOMER 13 did not discuss COVID-19 with Tasha or tell Tasha that CUSTOMER 13 was sick with COVID-19 in 2021.

236. Tasha reported the false amounts on CUSTOMER 13's 2021 return to generate or increase CUSTOMER 13's refund.

**CUSTOMER 14**

237. Tasha prepared CUSTOMER 14's federal income tax return for tax year 2021.

238. CUSTOMER 14's 2021 return was submitted under EFIN 381240.

239. CUSTOMER 14's 2021 return contained fabricated child and dependent care expenses in the amount of $7,200, reported on Form 2441.

240. CUSTOMER 14 did not pay $7,200 in dependent care expenses. CUSTOMER 14 paid approximately $200 in dependent care expenses in 2021.

241. CUSTOMER 14's 2021 return contained fabricated gross income of $1,850, contract labor of $940, supplies of $2,644, and travel $2,417 for a net loss of $4,151, reported on Schedule C for a home care business.

242. CUSTOMER 14 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 14 tell Tasha they had.

243. CUSTOMER 14 did not tell Tasha that they had a business.

244. CUSTOMER 14 did not have a business. CUSTOMER 14 did work in home care, but was paid on a W-2 that was reported on her 2021 return.

245. As a result of Tasha's manipulation of the Schedule C items, CUSTOMER 14's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 14 was not entitled.

246. Tasha reported the false amounts on CUSTOMER 14's 2021 return to generate or increase CUSTOMER 14's refund.

**<u>CUSTOMER 15</u>**

247. Tasha prepared CUSTOMER 15's federal income tax return for tax year 2021.

248. CUSTOMER 15's 2021 return was submitted under EFIN 381240.

249. CUSTOMER 15's 2021 return contained fabricated child and dependent care expenses in the amount of $6,400, reported on Form 2441.

250. CUSTOMER 15 did not pay $6,400 in dependent care expenses.

251. CUSTOMER 15 did pay $1,000 to an individual to care for CUSTOMER 15's dependent. However, that individual was a family member under the age of 19, and as such, the payment does not qualify for the credit. *See Publication 503: Child and Dependent Care Expenses,* DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE (December 20, 2021) at 5, https://www.irs.gov/pub/irs-prior/p503--2021.pdf.

252. Tasha reported the false amounts on CUSTOMER 15's 2021 return to generate or increase CUSTOMER 15's refund.

***Kiana Dancy***

**CUSTOMER 16**

253. Dancy prepared CUSTOMER 16's federal income tax return for tax year 2021.

254. CUSTOMER 16's 2021 return was submitted under EFIN 381240.

255. CUSTOMER 16's 2021 return contained fabricated gross income of $7,892 and supplies of $675 for a net profit of $7,217, reported on Schedule C for a clothing accessories store business.

256. CUSTOMER 16 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 16 tell Dancy that they had.

257. CUSTOMER 16 did nails and hair for friends and family in 2021. CUSTOMER 16 earned approximately $2,000 from this for the entire year, and paid for supplies in the approximate amount of $200.

258. CUSTOMER 16's 2021 return reported less than $2,000 in W-2 income.

259. As a result of Dancy's manipulation of the Schedule C items, CUSTOMER 16's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 16 was not entitled.

260. CUSTOMER 16's 2021 return also contained fabricated child and dependent care expenses in the amount of $3,600, reported on Form 2441.

261. CUSTOMER 16 did not pay dependent care expenses in the amount described in the preceding paragraph, nor did CUSTOMER 16 tell Dancy that they had. CUSTOMER 16 paid approximately $600 in dependent care expenses.

262. Dancy reported the false amounts on CUSTOMER 16's 2021 return to generate or increase CUSTOMER 16's refund.

**CUSTOMER 17**

263. Dancy prepared CUSTOMER 17's federal income tax return for tax year 2021.

264. CUSTOMER 17's 2021 return was submitted under EFIN 381240.

265. CUSTOMER 17's 2021 return contained fabricated gross income of $2,850, advertising of $125, car and truck expenses of $1,392, supplies of $6,392, and "cell" of $1,368, for a net loss of $6,427, all reported on a Schedule C for child day care services business.

266. CUSTOMER 17 did not incur the Schedule C items described in the preceding paragraph, nor did CUSTOMER 17 tell Dancy they had.

267. CUSTOMER 17 did not have a business in 2021.

268. Dancy did not ask CUSTOMER 17 about whether CUSTOMER 17 had a business in 2021.

269. CUSTOMER 17's 2021 return reported W-2 income.

270. As a result of Dancy's fabrication of the Schedule C items, CUSTOMER 17's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 17 was not entitled.

271. Dancy reported the false amounts on CUSTOMER 17's 2021 return to generate or increase CUSTOMER 17's refund.

**CUSTOMER 18**

272. Dancy prepared CUSTOMER 18's federal income tax return for tax year 2021.

273. CUSTOMER 18's 2021 return was submitted under EFIN 381240.

274. CUSTOMER 18's 2021 return contained fabricated gross income of $2,698, advertising expenses of $109, car and truck expenses of $1,645, supplies of $5,875, and other expenses of $780 for a net loss of $5,711, reported on Schedule C for a hair business.

275. CUSTOMER 18 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 18 tell Dancy they had.

276. CUSTOMER 18 does not have a vehicle and does not drive.

277. CUSTOMER 18 did do hairdressing for a few months, but CUSTOMER 18 only earned approximately $400-$600. CUSTOMER 18 spent approximately $200 on supplies.

278. As a result of Dancy's manipulation of the Schedule C amounts, CUSTOMER 18's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 18 was not entitled.

279. Dancy reported the false amounts on CUSTOMER 18's 2021 return to generate or increase CUSTOMER 18's refund.

***Sade Cooper***

**CUSTOMER 19**

280. Cooper prepared CUSTOMER 19's federal income tax return for tax year 2021.

281. CUSTOMER 19's 2021 return was submitted under EFIN 381240.

282. CUSTOMER 19 paid $1,000 for the return preparation, and the fee was taken from CUSTOMER 19's return.

283. CUSTOMER 19's 2021 return contained fabricated gross income of $3,909, and advertising of $123, for a net profit of $3,786, all reported on Schedule C for a home improvement business.

284. CUSTOMER 19 did not incur the Schedule C items described in the preceding paragraph, nor did CUSTOMER 19 tell Cooper they did.

285. CUSTOMER 19 never had a home improvement business.

286. CUSTOMER 19's 2021 return reported less than $7,000 in W-2 income, and reported one dependent.

287. As a result of Cooper's manipulation of the Schedule C items, CUSTOMER 19's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 19 was not entitled.

288. CUSTOMER 19's 2021 return contained fabricated child and dependent care expenses in the amount of $8,000, reported on Form 2441.

289. CUSTOMER 19 did not pay $8,000 in dependent care expenses. CUSTOMER 19 did not tell Cooper they paid this amount in dependent care expenses.

290. CUSTOMER 19 paid a few hundred dollars for a school program for CUSTOMER 19's dependent. Family members also assisted in watching CUSTOMER 19's dependent.

291. CUSTOMER 19 does not know the childcare provider listed on CUSTOMER 19's return.

292. Cooper reported the false amounts on CUSTOMER 19's 2021 return to generate or increase CUSTOMER 19's refund.

**CUSTOMER 20**

293. Cooper prepared CUSTOMER 20's federal income tax return for tax year 2021.

294. CUSTOMER 20's 2021 return was submitted under EFIN 381240.

295. CUSTOMER 20's 2021 return contained fabricated gross income of $1,567, repairs and maintenance of $9,748, and supplies of $15,474, for a net loss of $23,655, all reported on Schedule C for an unclassified business.

296. CUSTOMER 20 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 20 tell Cooper they had.

297. CUSTOMER 20 offered babysitting and private lessons in 2021. CUSTOMER 20 made between $4,000 and $5,000 in 2021 from this.

298. CUSTOMER 20's return reported W-2 income.

299. As a result of Cooper's manipulation of the Schedule C items, CUSTOMER 20's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 20 was not entitled.

300. CUSTOMER 20's 2021 return contained a schedule A with a fabricated home mortgage interest deduction of $12,408.

301. CUSTOMER 20 did not pay home mortgage interest in the amount of $12,000. Instead, they paid less than $1,000 in home mortgage interest.

302. Cooper reported the false items and amounts on CUSTOMER 20's 2021 return to generate or increase CUSTOMER 20's refund.

**CUSTOMER 21**

303. Cooper prepared CUSTOMER 21's federal income tax return for tax year 2021.

304. CUSTOMER 21's 2021 return was submitted under EFIN 381240.

305. CUSTOMER 21's 2021 return contained fabricated adjusted qualified education expenses in the amount of $4,000.

306. CUSTOMER 21 did not incur the qualified education expenses in the amount reported on CUSTOMER 21's 2021 return, nor did CUSTOMER 21 tell Cooper they did.

307. CUSTOMER 21 did not attend any school in 2021.

308. CUSTOMER 21's 2021 return contained fabricated gross income of $1,196 and supplies of $9,689 for a net loss of $8,493, all reported on Schedule C for a mechanic business.

309. CUSTOMER 21 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 21 tell Cooper they had.

310. CUSTOMER 21 was never a mechanic.

311. CUSTOMER 21's 2021 return reported W-2 income.

312. As a result of the manipulation of the Schedule C item amounts, CUSTOMER 21's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 21 was not entitled.

313. Cooper reported the false items and amounts on CUSTOMER 21's 2021 return to generate or increase CUSTOMER 21's refund.

**CUSTOMER 22**

314. Cooper prepared CUSTOMER 22's federal income tax return for tax year 2021.

315. CUSTOMER 22's 2021 return was submitted under EFIN 381240.

316. CUSTOMER 22's 2021 return contained gross income of $1,547, and fabricated expenses of advertising of $150, repairs and maintenance of $5,698,

supplies of $20,854, and utilities of $1,968, for a net loss of $27,123, reported on Schedule C for an unclassified business.

317. CUSTOMER 22 did not incur the Schedule C expenses in the amounts described in the preceding paragraph, nor did CUSTOMER 22 tell Cooper they had.

318. In 2021, CUSTOMER 22 tried to start a clothing business. CUSTOMER 22 had a net loss of approximately $1,500 from this business.

319. CUSTOMER 22's 2021 return reported W-2 income.

320. Cooper reported the false items and amounts on CUSTOMER 22's 2021 return to reduce CUSTOMER 22's tax liabilities or increase CUSTOMER 22's refund.

**CUSTOMER 23**

321. Cooper prepared CUSTOMER 23's federal income tax return for tax year 2021.

322. CUSTOMER 23's 2021 return was submitted under EFIN 381240.

323. CUSTOMER 23's 2021 return contained fabricated qualified education expenses in the amount of $4,000.

324. CUSTOMER 23 did not incur the qualified education expenses in the amount reported on CUSTOMER 23's 2021 return, nor did CUSTOMER 23 tell Cooper they had.

325. CUSTOMER 23 did not attend any school in 2021.

326. CUSTOMER 23's 2021 return contained fabricated gross income of $1,023, repairs and maintenance of $2,154, and supplies of $6,348, for a net loss of $7,479, all reported on Schedule C for an "unclassified" business.

327. CUSTOMER 23 did not incur the Schedule C items in the amounts described in the preceding paragraph, nor did CUSTOMER 23 tell Cooper they had.

328. CUSTOMER 23's 2021 return reported W-2 income.

329. As a result of the manipulation of the Schedule C items, CUSTOMER 23's 2021 return reported an Earned Income Tax Credit in an amount to which CUSTOMER 23 was not entitled.

330. Cooper reported the false items and amounts on CUSTOMER 23's 2021 return to generate or increase CUSTOMER 23's refund.

331. CUSTOMER 23 was charged more than $600 for the return preparation.

332. When CUSTOMER 23 cashed CUSTOMER 23's refund check at the Gratiot office, Cooper asked to be paid extra cash.

**Harm Caused by the Defendants**

333. Defendants' customers have been harmed because they paid defendants fees to prepare proper tax returns, but instead defendants prepared false and fraudulent returns that substantially underreported and underpaid the customers' correct tax liabilities, potentially exposing the customers to statutory penalties.

334. The United States has been harmed financially because it has not received, and may never be able to collect, the taxes lawfully due and owing from defendants' customers. During its investigation, the IRS interviewed 41 of Defendants' customers, whose returns Defendants prepared and filed in 2022. Based on those interviews, the total estimated loss to the United States due to returns prepared by Defendants and filed in 2022 is $2,176,831 (as described in ¶ 109). The total tax loss for the 34 returns alone is calculated to be $117,589 (supra ¶ 108).

335. Defendants further harm the United States because the IRS must devote some of its limited resources to investigating defendants' tax return preparation, including ascertaining their customers' correct tax liabilities, recovering any refunds erroneously issued, and attempting to collect any additional taxes and penalties, some of which may not be collectible.

336. Defendants' customers have been harmed because they paid defendants fees, including demands for unquoted fees, to prepare proper tax returns, but instead defendants prepared false and fraudulent returns that substantially underreported and underpaid the customers' correct tax liabilities, potentially exposing the customers to statutory penalties in addition to repaying the erroneous refunds.

337. In addition to the direct harm defendants have caused the United States and their customers by preparing false and fraudulent tax returns, defendants' activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

338. Defendants also cause harm to honest tax return preparers, over whom defendants gain an unfair competitive advantage by preparing returns that falsely understate income tax liability or generate or inflate tax refunds for their customers.

339. Prior to the IRS's investigation of Defendants in this case, Defendants Patrick, Debra, Dancy, Cooper, and Tasha personally received multiple letters from the IRS Return Preparer Office notifying them that they have submitted returns claiming tax benefits that have a high likelihood of errors or that they failed to include necessary due diligence checklists and that not meeting due diligence

requirements can result in a penalty assessed against the preparer. Each of these Defendants has received at least four of these letters since 2013.

340. The IRS has previously assessed preparer penalties under I.R.C. § 6695(g) against Debra (in 2009 and 2010) and Tasha (in 2017).

341. Defendants continue to prepare returns. In 2023, as of December, over 1,000 returns had been filed under EIN 86-1615249, EFIN 381240.

## Count I: Injunction Under 26 U.S.C. § 7407 for Violations of 26 U.S.C. §§ 6694 and 6695 and for Deceptive or Fraudulent Conduct that Interferes with the Administration of the Internal Revenue Code

342. 26 U.S.C. § 7407 authorizes a district court to enjoin any tax return preparer from further engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws, if injunctive relief is appropriate to prevent the recurrence of such conduct.

343. 26 U.S.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or a substantial portion thereof. The definition includes business entities like J&A, and their owners and operators like Heibeck. *See United States v. Elsass*, 978 F. Supp. 2d 901, 901-11 (S.D. Ohio 2013), *aff'd*, 759 F.3d 390 (6th Cir. 2014); *United States v. Stinson*, Case No. 6:14-cv-1534-Orl-22TBS, 2016 WL 8488240 at *5 (M.D. Fla. Aug. 26, 2016); *see also* 26 U.S.C.

§ 7701(a)(1) (defining person to include partnerships, associations, companies, and corporations).

344. Defendants are tax return preparers within the meaning of 26 U.S.C. § 7701(a)(36).

345. 26 U.S.C. § 6694(a) penalizes a tax return preparer if: (1) the preparer prepared a return or claim for refund that included an understatement of liability due to a position for which there was not substantial authority; and (2) the preparer knew (or reasonably should have known) of such position.

346. 26 U.S.C. § 6694(e) defines understatement of liability to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

347. In violation of 26 U.S.C. § 6694(a), Defendants prepared returns that understated their customers' tax liabilities and that they knew or should have known contained positions for which there was no substantial authority or reasonable basis.

348. 26 U.S.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim for refund with an understatement of liability: (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

349. In violation of 26 U.S.C. § 6694(b), Defendants prepared tax returns for their customers that they knew or reasonably should have known understated their customers' liabilities and/or overstated their customers' refunds through the Schedule C Scheme, the Dependent Care Expenses Scheme, the Educational Expenses Scheme, and the Covid-19 Scheme.

350. 26 U.S.C. § 6695(g)(1) and (2) penalize a tax return preparer who fails to comply with due diligence requirements with respect to determining eligibility to file as head of household, eligibility for (or the amount of) tax credits for qualified education expenses, and eligibility for (or the amount of) the Earned Income Tax Credit.

351. In violation of 26 U.S.C. § 6695(g)(1) and (2), Defendants routinely prepared returns claiming the Earned Income Tax Credit, and individual tax return preparation staff members Dancy and Cooper prepared returns claiming credits for qualified education expenses, but failed to comply with due diligence requirements for those determinations.

352. An injunction against Defendants is necessary and appropriate to prevent the recurrence of this conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695.

353. Additionally, under 26 U.S.C. § 7407, if this Court finds that a return preparer has continually or repeatedly engaged in conduct subject to penalty under

26 U.S.C. § 6694 or 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if this Court further finds that a narrower injunction prohibiting the enumerated conduct would not be sufficient to prevent further interference with the proper administration of the internal revenue laws, this Court may enjoin that person from further acting as a federal income tax return preparer.

354. Defendants' return preparation activities have demonstrated multiple schemes repeated across several preparers. Given this variety and breadth, anything less than a permanent injunction and complete bar on the preparation of tax returns for others is unlikely to stop Defendants from preparing false tax returns.

**Count II: Injunction Under 26 U.S.C. § 7402(a) for Unlawful Interference with Enforcement of the Internal Revenue Laws and General Appropriateness of Injunctive Relief**

355. Pursuant to 26 U.S.C. § 7402(a), this Court is authorized to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

356. 26 U.S.C. § 7402(a) expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

357. Defendants' activities described above substantially interfere with the enforcement of the internal revenue laws because they prepare and file numerous false tax returns that result in customers not paying their true federal tax liabilities and receiving tax refunds they are not entitled to.

358. Their activities also interfere with the enforcement of the internal revenue laws because the United States must commit limited resources to auditing customers of defendants and trying to recover the fraudulently induced refunds, which prevents the United States from committing those resources to other efforts to enforce the internal revenue laws.

359. Defendants' activities also substantially interfere with the enforcement of the internal revenue laws because they undermine public confidence in tax administration and they take business away from honest tax return preparers.

360. An injunction prohibiting Defendants from preparing or assisting in the preparation of tax returns is needed to stop them from preparing and filing false tax returns and from otherwise interfering with the proper administration and enforcement of the internal revenue laws. By contrast, Defendants will not suffer any cognizable harm by being enjoined from acting as tax return preparers given that, when acting as tax return preparers, they prepare and profit from false returns that harm the United States.

361. If Defendants are not enjoined, the United States will continue to suffer irreparable harm from the underpayment of taxes, the payment of refunds based on false tax returns, the exhaustion of resources to enforce the internal revenue laws, and undermined public confidence in the administration of the federal tax system combined with an encouragement of noncompliance with the internal revenue laws.

362. The public interest would be advanced by enjoining Defendants because an injunction will stop their illegal conduct and the harm it is causing to the United States Treasury, Defendants' customers, the public, and honest return preparers.

363. An injunction is necessary and appropriate because the United States has no adequate remedy at law.

WHEREFORE, the United States seeks the following relief:

A. That the Court find that Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 and § 6695; that an injunction is necessary and appropriate to prevent the recurrence of this conduct; that an injunction merely prohibiting conduct subject to penalty would be insufficient to prevent Defendants' interference with the proper administration of the tax laws; and that,

pursuant to 26 U.S.C. § 7407, Defendants should be permanently enjoined from acting as tax return preparers;

B. That the Court find that Defendants have interfered with the enforcement of the internal revenue laws and that permanently enjoining them from acting as tax return preparers is necessary and appropriate to enforce the internal revenue laws pursuant to 26 U.S.C. § 7402(a) and under the Court's inherent equity powers;

C. That this Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter a permanent injunction enjoining Defendants, individually and doing business as J&A, from directly or indirectly:

    1. Preparing or assisting in the preparation or filing, or directing the preparation, of federal tax returns, amended returns, and other related documents and forms for anyone other than themselves;

    2. Advising, counseling, or instructing anyone about the preparation of a federal tax return;

    3. Owning, managing, controlling, working for, assisting or volunteering for an entity that is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;

4. Working or volunteering for a division of an entity in which that division is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;
5. Advertising tax return preparation services through any medium, including print, online, and social media;
6. Maintaining, assigning, transferring, holding, using, obtaining, or renewing a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);
7. Representing any person in connection with any matter before the IRS;
8. Employing any person to work as a federal tax return preparer to prepare returns for someone other than themselves;
9. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax documents or forms for others or representing persons before the IRS;
10. Referring any person to a tax preparation firm or a tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

11. Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of Defendants generated by their tax return preparation activities, including but not limited to customer lists; and,

12. Engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694, or 6695, or engaging in any other conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

D. That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order requiring each Defendant to prominently post at all physical locations where the Defendant conducts any type of business, at their own expense and within 30 days of the Court's order, a copy of this order of permanent injunction, as well as a sign (with dimensions of at least 12 by 24 inches) saying as follows: "J&A Tax Services, Equitax, Ann Heibeck a/k/a Ann Marie Dziergas, Crystal Patrick, Debra Washington, Kianna Dancy, Sade Cooper, and Tasha Washington will no longer be serving as federal tax return preparers, per Court order";

E. That the Court, pursuant to 26 U.S.C. §§ 7402(a), enter an order requiring each Defendant to prominently post an electronic copy of the permanent injunction on any website or social media site or social media

profile that the Defendant maintains or creates over the next five years, excluding Defendants' social media that are entirely personal in nature;

F. That the Court, pursuant to 26 U.S.C. §§ 7402(a), enter an order requiring each Defendant to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number all persons for whom each Defendant prepared federal tax returns or claims for a refund, for tax years beginning with 2021 and continuing through this litigation;

G. That the Court, pursuant to 26 U.S.C. §§ 7402(a), enter an order requiring each Defendant, within 30 days of receiving the Court's order, to email, if an email address is known, or otherwise send by U.S. mail to, all persons for whom each Defendant has prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2022, a copy of the order of permanent injunction, with no other text, enclosures, or attachments unless approved in writing by the Department of Justice, and a copy of the complaint setting forth the allegations as to how Defendants fraudulently prepared federal tax returns;

H. That the Court, pursuant to 26 U.S.C. §§ 7402(a), enter an order requiring each Defendant, within 45 days of receiving the Court's order,

to file a declaration, signed under penalty of perjury, confirming that each Defendant has received a copy of the Court's order and is in compliance with the terms described in Paragraphs C through G of this Complaint;

I. That this Court permit the United States to conduct post-judgment discovery to ensure Defendants' compliance with the permanent injunction;

J. That this Court retain jurisdiction over Defendants and over this action to enforce any injunction entered against them;

K. That this Court grant the United States such other and further relief as the Court deems appropriate.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Isabelle Dietz
ISABELLE DIETZ
JULIA GLEN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-3714 (v) (Dietz)
202-514-6484 (v) (Glen)
202-514-5238 (f)
Isabelle.dietz@usdoj.gov
Julia.m.glen@usdoj.gov

Local Counsel:

DAWN N. ISON
United States Attorney

KEVIN ERSKINE (P69120)
Assistant U.S. Attorney
United States Attorney's Office
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9610
Email: Kevin.Erskine@usdoj.gov